UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>  v.<br><br>SAMUEL R. CHACON, MD,<br><br>        Defendant. | Case No. 3:25-cr-00031-ART-CLB<br>ORDER DENYING MOTION FOR<br>CHANGE OF VENUE (ECF No. 16) |

Defendant Samuel R. Chacon brings this Motion to Change Venue from Reno Nevada to Las Vegas, Nevada pursuant to Federal Rule of Civil Procedure 21(a) for presumed prejudice due to pretrial publicity. (ECF No. 16.)

## I.     Background

Defendant was indicted for violations of 18 U.S.C. § 1347, Health Care Fraud and 18 U.S.C. § 1035, False Statements Related to Health Care Matters, on September 18, 2025. (ECF No. 1.) Defendant is a Board-Certified gynecologist alleged to have performed a series of unnecessary medical procedures on his patients in Reno between 2017 and 2022. (*Id.*) Defendant has faced legal troubles since 2022, including an arrest for solicitation of prostitution and the revocation of his license to practice medicine for a period of five years by the Nevada State Board of Medical Examiners. (ECF Nos. 16, 18.)

These events have generated some local media coverage, starting in 2022 through 2025, in the *Reno Gazette Journal,* Fox Reno, KKOH, This is Reno, and other local news channels and sites. (*See* ECF No. 16-2 at 21-24.) Some online articles have generated comments from alleged victims and community members. (ECF No. 16-4 at 2-5.) Others have posted on Facebook with the hashtag "#StopChacon" and attended small rallies outside of his practice in Reno. (ECF Nos. 16-3, 16-5, 16-11 ("[a] small protest was held . . . against a local doctor.") Rallies were held in November 2022, January 2023, and June

1

2025. (ECF No. 16-3 at 8, 9, 17.) Around thirty people, including victims and their families, also coordinated to attend Defendant's hearings before the Nevada State Board of Medical Examiners on October 12, 2023, and December 18, 2023. (ECF No. 16-11.)

## II.    Legal Standard

Under Federal Rule of Criminal Procedure 21(a), the court "must transfer the proceeding against a defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). "Transfers within the district to avoid prejudice are within the power of the judge to fix the place of trial as provided by Rule 18." Advisory Committee Notes, 1966 Amendments, Fed. R. Crim. P. 21; Fed. R. Crim. P. 18; *see also U.S. v. Benzer*, No. 2:13-cv-00018-JCM-GWF, 2014 WL 7359078, *6-*7 (D. Nev. Dec. 24, 2014) (applying the same standard to request for intra-district transfer between Las Vegas and Reno as to a request between districts, including maintaining the same judge).

To prevail on a motion to transfer venue, a defendant must show actual or presumed prejudice. *Daniels v. Woodford*, 428 F.3d 1181, 1210 (9th Cir. 2005). Actual prejudice is measured through the voir dire process, which is not applicable at this time. "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988). Finding presumed prejudice is rare and is generally "reserved for an extreme situation." *Casey v. Moore*, 386 F.3d 896, 906 (9th Cir. 2004) (citing *Harris*, 885 F.2d at 1361). The Ninth Circuit applies a three-factor test to determine presumed prejudice: "(1) whether there was a barrage of inflammatory publicity immediately prior to trial, amounting to a huge wave of public passion; (2) whether the news accounts were primarily factual; and (3)

2

whether the media accounts contained inflammatory or prejudicial material not admissible at trial." *Id.* These factors are also balanced by the size and characteristics of the relevant community. *Skilling v. U.S.*, 561 U.S. 358, 382 (2010).

### I. Analysis

Defendant argues that the publicity in Reno has met all the factors for presumed prejudice, and that the available jury pool in the city is insufficient to ensure that he will receive an impartial trial. The government argues that the media coverage and social media engagement garnered by Defendant has not saturated the community in such a way that transfer is appropriate.

### a. Barrage of Inflammatory Publicity

Defendant argues that there has been a constant barrage of negative publicity in Reno that supports a presumption of prejudice, including sixteen adverse articles, social media posts, and hashtags. (ECF No. 16 at 5-6.) The government argues that only some of those sixteen news articles relate to the case at hand and occurred over the length of three years, and that the social media response has not been overwhelming. (ECF No. 18 at 6.) Additionally, the trial itself is not scheduled until October 2026, by which time much of the media coverage cited by the defendant will have diminished in attention. (*Id.* at 7.)

The Court finds that the publicity has not risen to the level of a "huge wave of public passion," per *Daniels*. Sixteen articles, some of which are not directed to the matter of this trial, do not amount to a "barrage of inflammatory publicity." *See Harris*, 885 F.3d at 1361 (identifying 136 news articles in five months as insufficient to meet presumption of prejudice). Defendant focuses heavily on the use of social media in its Response, claiming that "#StopChacon" is "ubiquitous on social media." (ECF No. 19 at 3.) The Facebook posts containing the hashtag with the most engagement have, respectively, 22 likes,

19 comments, and 1 share; 18 likes, 26 comments; and 36 likes, 12 comments, and 5 shares. (ECF No. 16-3 at 6, 12, 16.) This is not sufficiently pervasive to demonstrate a penetrating intensity of negative public sentiment. Neither are the small rallies pictured in the news articles cited by the Defendant, which appear to have less than a dozen people. *See Monterrosa v. City of Vallejo*, No. 2:20-cv-01563-TLN-DB, 2021 WL 516736, at *5 (E.D. Cal. Feb. 11, 2021) (protests after death of victim with "hundreds of people" did not amount to a "huge wave of public passion").

This factor weighs in favor of denying the motion.

### b. Primarily Factual News Accounts

Defendant argues that the USAO's press release related to his indictment is not primarily factual because the Special Agent in Charge ("SAC") wrote that "the overwhelming fraud" uncovered in the investigation "revealed a blatant disregard for . . . Medicaid." (ECF No. 16 at 6.) He claims that this line was then republished by other outlets without a disclaimer noting he is innocent until proven guilty. (ECF No. 19 at 5.) The government counters that this one phrase from a press release is not reflective of media coverage as a whole, and the release itself states that the charges are only allegations. (ECF No. 18 at 11.)

Whether news accounts are primarily factual refers to the entire body of reporting on a case, not one single statement. *See United States v. Carona*, 571 F. Supp. 2d 1157, 1160 (C.D. Cal. 2008) ("As with any high-profile case, the media coverage here does include editorials and other opinionated statement expressing bias and hostility against the Defendants. But the majority of media accounts are factual in nature.) The two articles that Defendant cites using the SAC's statement do not transform the landscape into one that is not primarily factual.

This factor weighs in favor of denying the motion.

### c. Inflammatory or Prejudicial Material Not Admissible at Trial

Defendant argues that the media accounts of his indictment and arrest are inflammatory or prejudicial because they contain mention of his settlement with the Medical Board, resulting in a five-year suspension, and a 2023 nolo contendere plea for solicitation of prostitution. (ECF No. 16 at 8.)

In *Harris v. Pulley*, some news accounts referred to the petitioner's prior criminal record and the alleged confession of the defendants. 885 F.3d at 1362. The Ninth Circuit found that though those accounts contained prejudicial information, the fact that they were published four months before jury selection dissipated their influence. *Id; see also Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1142 (holding that media coverage that contained inadmissible information was not sufficiently inflammatory); *Patton v. Yount*, 467 U.S. 1025, 1031-35 (1984) (venue change not required where coverage described prior conviction, insanity plea, and confession from first trial not relevant to second trial). The trial in this case will not occur for another nine months, and the most recent articles that Defendant cites were published in September of 2025. By the time the Court goes through the voir dire process, it will have been more than a year since those articles were published. Similarly, the coordination of rallies or public meeting attendance primarily by victims and their families is not sufficiently inflammatory to rise to the level of presumed prejudice across the jury pool.

This factor weighs in favor of denying the motion.

### d. Size of the Reno Community

Parties dispute whether the Reno jury pool of over 550,000 is large enough to ensure an unbiased panel. "[The size of the relevant community is an important factor in determining whether the community is 'so saturated' with negative media that a presumption of prejudice should apply." *Carona*, 571 F. Supp. 2d at 1161. "Almost all cases in which the Supreme Court has found that

press coverage deprived the defendant of a fair trial have been tried in small rural communities." *Columbia Broadcasting Systems, Inc. v. U.S. Dist. Ct. for Cent. Dist. Of Cal.*, 729 F.2d 1174, 1181 (9th Cir. 1984) (citing *Rideau v. Louisiana.* 373 U.S. 723,724-25 (1963) (a parish of 150,000); *Irvin v. Dowd,* 366 U.S. 717 (1961) (a county of 30,000)).

The Supreme Court has found that Clark County's population of 600,000 in 1988 was large enough to find that "only the most damaging information could give rise to any likelihood of prejudice." *U.S. v. Kaplan,* No. 2:13-cr-00377-GMN-CWH, 2014 WL 3366442, at *4 (D. Nev. Jul. 4, 2014) (citing *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1044, 111 S.Ct. 2720 (1991)). Reno has a large enough jury pool that it will not be saturated with prejudicial and inflammatory media publicity.

Therefore, this factor also weighs in favor of denying the motion.

### e. Voir Dire Process

The Court also finds that any alleged presumed prejudice described by the Defendant can be resolved by a comprehensive voir dire process. *See Carona,* 571 F. Supp. 2d at 1162 (("[v]oir dire is the prime safeguard" for identifying juror bias, and "[t]he power of the voir dire process to illicit honest answers should not be underestimated" (internal quotation marks omitted)). Additional procedural safeguards against prejudicial publicity may also be exercised to ensure a fair process. *See Monterrosa,* 2021 WL 516736 at *7 (citing *Sheppard v. US,* 384 U.S. 333, 357-362, 86 S.Ct. 1507 (1966)). The fact that it may take longer or require more examination is not a factor in determining whether change of venue for the purposes of presumed prejudice is appropriate.

### II.    Conclusion

It is therefore ordered that Defendant's Motion to Change Venue (ECF No. 16) is DENIED.

Dated this 16th day of January, 2026.

ANNE R. TRAUM

UNITED STATES DISTRICT JUDGE